# School District of Berlin Township *v.* School District of Damascus Township, Appellant.

*School districts — Adjoining school districts — Furnishing high school education to residents of adjacent district—Act of May 18, 1911, P. L. 309, section 1709—School Code.*

In an action by one school district against an adjoining school district, under the provisions of section 1709 of the School Code, for cost of tuition of pupils of defendant's district in plaintiff's high school, it was not necessary to show that the pupils had demanded of the defendant district transportation to the defendant's high school, before entering that of the plaintiff.

It was the duty of the school directors to be familiar with the requirements of the pupils under their care, and when the directors of the defendant district failed to provide transportation, they must be deemed to have elected to pay tuition to the adjoining district, rather than transport the pupils to their own school.

Argued March 6, 1922.   Appeal, No. 46, March T., 1922, by defendant, from judgment of C. P. Wayne Co., March T., 1918, No. 1, on verdict for plaintiff in case of School District of Berlin Township v. School District of Damascus Township.   Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER and LINN, JJ. Affirmed.

Assumpsit to recover cost of tuition furnished by plaintiff's school district to pupils living in defendant's school district.   Before NEWCOMB, J., 45th Judicial District, specially presiding.

Verdict for plaintiff for $244.02 and judgment thereon. Defendant appealed.

The facts are stated in the following opinion of the court below refusing motions for new trial and for judgment non obstante veredicto:

Assumpsit for cost of tuition, etc., furnished by plaintiff to nonresident pupils.

The issue went to the jury against counter requests for binding instructions, and there was a verdict for plaintiff; hence these motions on part of defendant which have been pending since last March awaiting the convenience of counsel so that argument was delayed until the 14th inst.

The facts, which so far as in dispute must be deemed to have been settled by the verdict, may be stated as follows:

1. The parties are adjoining school districts, each having a high school organized and equipped under the provisions of the Public School Code of 18th May, 1911, P. L. 309, and its supplements. That of plaintiff is known in the case as the Beach Lake High school.

2. This school—hereinafter called the Beach Lake— was attended by six pupils of school age, resident in the defendant district, during the term beginning in September, 1916, and ending May 31, 1917, at the total cost to plaintiff of $206.80 for tuition, books and supplies, which did not exceed the cost of the like service furnished to the other pupils pursuing the same studies during that term.

3. They had been prepared at the elementary schools in defendant district and were then eligible to high school privileges, as appeared by the official records of the county superintendent who had so certified upon examining and finding them qualified.

4. Their respective places of residence were distant from the Damascus high school from six to ten miles. The nearest and most convenient high school available to them was the Beach Lake, at a distance of about three miles.

5. They attended the latter for want of any provision by defendant for their transportation to the Damascus school. They did so without any formal request for transportation having been made upon defendant.

6. Early in the term, that is, sometime in October, 1916, by letter of its secretary, plaintiff advised defend-

ant of the fact that these pupils were so in attendance at Beach Lake. To this letter there was no response.

7. Under date of July 12, 1917, plaintiff's secretary certified to defendant a statement setting forth the names of the pupils, the length of time attended by each, and the cost of the items above mentioned amounting to $129.25. Later it was found that owing to some clerical error this figure was incorrect and thereupon defendant was further advised as next hereinafter stated.

8. No attention having been paid to the statement of July, in November plaintiff consulted a lawyer in Honesdale, who discovered the error referred to, and by his advice a new statement was certified in like form, but showing the amount to be $206.80. This was sent to defendant November 21, 1917; but, as in case of the other communications, it was wholly ignored, and in March, 1918, plaintiff brought suit.

9. The larger part of the cost was that for tuition about which there could be no possible uncertainty nor dispute. The balance was for textbooks and supplies which were lumped together. This was due to the fact that as between its several schools no separate and distinct account of these items had been kept by the district; so that the secretary had to depend upon an estimate to fix the amount chargeable to the Beach Lake school. But the verdict affirmed plaintiff's contention that the estimate had been made low enough to be on the safe side and not in excess of the actual costs.

Plaintiff's theory is that these pupils attended its high school in the exercise of a right conferred by section 1709 of the code.

The claim is resisted because:

1. Transportation at the hands of defendant had not been first demanded;

2. The account had not been properly kept nor the bill certified in due form of law for want of separate and distinct items as between tuition, books and supplies;

3. The right of action was barred for want of a timely statement "at the close of the term," within the intent and meaning of section 1708 of the code.

Thus the issue presents a case where the equity and justice of plaintiff's demand is quite as conspicuous on the one hand, as the naked technicality of the defense on the other. But to the credit of the learned counsel it may be said there is no dissembling on his part. He frankly avows he neither has any other defense, nor any apology to make on that account, for the simple reason that the obligation sought to be enforced is one imposed by law, and not by contract of the parties. Hence, he contends, plaintiff has the burden of making out a case in strict conformity with the statute, and his client the duty of exacting that measure of proof.

If, for the sake of discussion, the soundness of his position be conceded it would seem that his views on the subject of strict construction are entertained with some reservation. For, at the outset he finds himself driven to the necessity of taking some latitude in order to make headroom for his first objection. This has to assume, as a fundamental condition precedent to any liability, that notice, in some form, of their desire to go to Beach Lake in default of transportation furnished, must be brought home to defendant by or on behalf of the pupils. Yet section 1709, by which the case must stand or fall, doesn't say so. The only way it can be read into the statute— short of main strength—is by force and effect of necessary implication. And this is apparently what counsel asserts. For, he asks, how otherwise can defendant know of any occasion to act?

To this the obvious answer is that, as public officials charged with the duty of furnishing the educational facilities ordained by the code, and clothed with powers commensurate with such duty, they must be presumed to know the grading of these pupils and that they were ready for the high school upon their fitness being certified by the county superintendent. The grade attained

was a matter of record in the school reports. Of these the defendant had the custody by hand of its secretary. By reference to the superintendent the fact that they were eligible for entrance to the high school could have been ascertained. The appointed business of directors is to direct. Official inertia on their part is not well calculated to serve the purposes of the public school system; and whatever may be otherwise said of the code, it cannot be criticized for giving countenance to the supposition that their corporate functions are merely passive in character and held in abeyance until called into active exercise at the instance and request of those entitled to its benefits.

One is not at liberty to speculate upon what may have been in the legislative mind; yet it cannot be overlooked that while section 1709 is silent on the subject, in case of another class of pupils the legislature was at pains to expressly require such notice, namely, in case of those prepared in schools outside the district of residence who may desire to attend an extra territorial high school at the expense of the home district. These must first present to the directors their credentials in form hereinafter mentioned: section 1707, as amended by Act of 1st June, 1915, P. L. 672.

In the one case, therefore, the legislature saw fit to require notice; in the other—of which the present is an example—it did not. It is not for the court to say that the amendment was intended to apply to both classes, where the legislature has ostensibly seen fit to restrict it to one. In the case where required, of what does the notice consist? Merely the submission of the superintendent's certificate that the pupil is found to be qualified. Why it is not so required of these prepared in the district of residence is no concern of ours. It was a matter for legislative consideration only. But it may be taken for granted that the distinction was based upon reasons which to the legislature appeared adequate; and of that, it was the judge. If called upon, however, to

account for the difference of treatment one would risk little in holding that it was due to the assumption that in case of those prepared in their home district actual notice is unnecessary, as official knowledge of the fact must be imputed to the directors.

Charged with that knowledge, the position of these directors was that of one who can make his election as between transportation, on the one hand, and reimbursement of the neighbor district on the other.

Having taken no step in and about the one requiring affirmative action, they must be deemed to have elected to abide by the other alternative. Counsel's theory to the contrary is believed to be untenable.

As regards the objection to the form of accounting, the question would seem to be purely practical.

No doubt the identity of the pupils and the time of attendance by each are indispensable, and must therefore distinctly appear in the certified statement, which in this case is open to no criticism on that score. For the rest it is self evident that while the subject-matter and maximum charge were expressly defined, no form of accounting was prescribed. Even if no formal account of the cost had been kept, there can be no legal reason why the omission should be fatal to the claim per se, provided the amount be susceptible of proof. In the first place, if defendant had acknowledged the letter of October by advising plaintiff of its denial of liability, the plaintiff district might have had the poor privilege of terminating the service if it saw fit. Again when in July the bill was received, if unsatisfactory either in form or substance, it would have been very easy, and indeed a matter of only ordinary civility to say so. The ground of objection might have admitted of satisfactory explanation; or the defects, if any, corrected. It is said defendant didn't owe plaintiff that small measure either of courtesy or consideration, as the claim is strictly ex lege and not of contractual origin. This arbitrary and intolerant attitude overlooks the fact that the remedy allowed is in form ex contractu. That is so because in its nature the

liability is quasi contractual, and, like all quasi contracts, draws to itself many of the incidents and consequences of true contract.

From first to last this defendant has chosen the seat of the scorner; or, if standing, has stood mute. It never condescended to take notice of any communication received from its neighbor. When on the trial the directors were asked if transportation would have been furnished if requested, their answers were evasive, but left little doubt that the request would have received the same scant courtesy; though at the same time it was virtually admitted that the cost of transportation would have exceeded this bill by several hundred dollars. It is believed there was enough to carry the question of amount to the jury, and their finding conclusively establishes the fact that it is not in excess of the amount allowed by law.

Finally it is said the statement was too late. This refers to the corrected statement of November, 1917.

Had that been the first attempt to furnish a bill the objection might have weight. True, it varied the amount, though not the subject-matter, as compared with that of July. That, in my judgment, was early enough to stand the test of reasonable time—being within six weeks after the close of the term. Therefore defendant had timely notice of the demand. They took no action on the faith of its correctness; hence they were not prejudiced by the eventual correction. That wasn't the trouble. Their intention to defeat the claim has been persisted in from the start. Small or large, regardless of the form of accounting or the certificate, their policy was to discountenance the demand of which for all practical purposes of the lawsuit they have had formal notice since July 12, 1917. Hence, in light of its attitude of unqualified resistance it is not apparent how it can justly complain that the question of reasonable time was left to the jury.

It accords neither with one's instinctive sense of justice and fair dealing, nor with my personal conception of the reciprocal rights and liabilities of the parties as de-

266 BERLIN TWP. S. D. *v.* DAMASCUS TWP. S. D., Appel.

Statement of Facts—Opinion of the Court. [79 Pa. Superior Ct.
fined by the code, that defendant should escape payment on either of these grounds.

The best facilities the public school system has to give were none too good for these sturdy little men and women of the defendant district. Its authorities should be proud of them. Morning and night, three long miles they trudged across northeastern Pennsylvania's rugged hills in all kinds of weather; in sunshine and storm; in season of frost, of snow and sleet; much of the time facing conditions most bleak and bitter; for what? That they might have the benefit of something more than the primary schools of their neighborhood could give. This they were furnished in good faith at plaintiff's expense. The cost was not an extravagant figure, a trifle over $200, being at the rate of $4.40 per month for each.

If defendant be entitled to immunity some other jurisdiction will have to say so.

Both rules are discharged and judgment is directed to be entered on the verdict for plaintiff sec. leg.

Exceptions noted for defendant as required by law.

*Errors assigned* were various rulings on evidence, the charge of the court and refusal of defendant's motions for a new trial and for judgment non obstante veredicto.

*A. G. Rutherford,* for appellant.

*M. E. Simons,* for appellee.

PER CURIAM, April 17, 1922:

The charge of the court below, taken with its opinion discharging the motion for judgment n. o. v., and the motion for a new trial has clearly and satisfactorily disposed of the question involved in this case, so that it is not necessary to supplement them with additional argument.

The assignments of error are overruled and the judgment is affirmed.